FILED
2012 Dec-12 PM 02:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

OTIS ELEVATOR COMPANY

PLAINTIFF,

v. Case No: CV 12-J-1708 NE

W.G.YATES & SONS CONSTRUCTION COMPANY a/k/a YATES CONSTRUCTION,

DEFENDANT.

**MEMORANDUM OPINION**

Pending before the court is defendant, W. G. Yates & Sons Construction Company's ("Yates") motion for partial summary judgment with evidentiary submissions (doc. 20), its brief in support of said motion (doc. 21), plaintiff Otis Elevator Company's ("Otis") response with evidentiary submissions (doc. 30), its brief in opposition to Yates' motion (doc. 31), Yates' reply with evidentiary submissions (doc. 35), and Otis' sur-reply (doc. 38). Defendant Yates seeks a judgment that declares that "Otis is liable to Yates for damages related to the failure of escalators furnished and installed by Otis to comply with the subject contract between Otis and Yates.....[and] that the escalators furnished and installed by Otis had an incorrect step width of 32 inches instead of the required 39.5 inches

and that Otis is liable for the damages incurred by Yates as a result of this nonconformity." Motion at 1.

Plaintiff Otis filed this action for breach of contract alleging that Yates has failed to pay Otis the money owed Otis under the subcontract with Yates of December 7, 2010. Otis also alleges that said breach is remediable under the Alabama Prompt Pay Act, Ala. Code § 8-29-1, *et seq.,* which provides for interest at 12% per annum plus attorney's fee. Complaint, Count II (Doc. 1).

Yates filed a counterclaim alleging that Otis breached the subcontract at issue by failing to install escalators with a step width of 40 inches and by failing to call to the attention of Yates that Otis was deviating from the Contract Documents by furnishing and installing escalators with a step width of 32 inches, resulting in damages to Yates for the costs to remedy said alleged breach. Counterclaim, ¶ 15 (doc. 11).

**FACTUAL BACKGROUND**

The pertinent facts are as follows:

The subcontract in question arose out of a baggage claim expansion project for Huntsville Madison County Airport Authority (the "Owner"). *See* Complaint (doc. 1). The architect for the project was Chapman Sisson Architects (the "Architect"). *See* Decl. of Dave Trimmer, ¶ 2, (submitted as Plaintiff's Exh. A);

Pinkston depo. at 39. Yates was the general contractor for the project. *See* Trimmer Decl., ¶ 2. As part of the work, Yates was required to install four escalators, two interior and two exterior. *See* Trimmer Decl., ¶ 3.

Yates solicited bids from three escalator suppliers, Otis, Thyssen Krupp and Schindler, for the supply and installation of the escalators. Pinkston depo. at 36. All three were asked to bid to plans and specifications. *Id.* at 36-37, 57; Master Spec Full Length (submitted as Plaintiff's Exh. D). The plans and specifications were made available at a website for viewing or to be downloaded. Decl. of Trey Steber, ¶ 2. Escalators have generally two dimensions for width, rated width ("nominal width") and step width (or "tread width"), being the width of the escalator stair treads. Rated width is ordinarily approximately 8 inches wider than step width. Step widths are typically 24 inches, 32 inches, or 40 inches, and the corresponding rated widths are usually approximately 32 inches, 40 inches, and 48 inches, respectively. *See* Steber Decl., ¶ 3.

Nowhere in the project specifications is either a rated width or a step width specified. *Id.*; Pinkston depo. at 57-58, 60, 95-96. One of the contract drawings, Drawing A180, did depict certain escalator drawings. Detail C6 of Drawing A180 addressed the two interior escalators and Detail A1 of A180 addressed the two exterior escalators. Steber Decl., ¶ 4. Based on these plans and specifications, Otis and Thyssen Krupp both proposed to supply and install escalators with a 32

inch step width. *See* Trimmer Decl., ¶10; Pinkston depo. at 52-53, 103-104, 136; June 2010 Otis Proposal at 2 (submitted as Plaintiff's Exh. F). The only bidder who proposed installing escalators on the project with a step width of 40 inches was Schindler, whose product was the undisclosed basis for the design. Pinkston depo.at 122-23; March 28, 2012, Letter from Yates to the Owner (submitted as Plaintiff's Exh. G). Yates chose Otis as the lowest bidder, but did not issue the subcontract in question until the Architect had approved Otis' shop drawings and product literature which showed that Otis was proposing to install 32 inch step width escalators. Pinkston depo. at 53-54; Trimmer Decl., ¶¶ 11, 12; Steber Decl., ¶ 8; Shop Drawings (submitted as Plaintiff's Exh. H). Yates also reviewed and approved Otis' submissions and shop drawings. Pinkston depo. at 53-54; Trimmer Decl., ¶ 11. At no time during the submittal and review process did either the Architect or Yates object to the proposed step width of 32 inches, nor did either of them ever express that escalators built to such specifications would not comply with the project plans and specifications. Pinkston depo. at 52-53; Steber Decl., ¶ 7.

After Yates' and the Architect's approval of the Otis shop drawings, the issuance of a signed subcontract ensued and Otis ordered and delivered the 32

inch step width escalators. Trimmer Decl., ¶ 12.[1] Yates constructed the wellways, that is the pits where the escalator motor and equipment are installed, for the escalators. Yates' wellways accommodated 32 inch step width escalators. Trimmer Decl., ¶ 12. At no time during this process did Yates or the Architect object to the 32 inch step width of the escalators. Pinkston depo. at 52-53; Trimmer Decl., ¶ 12.

As the escalator work was nearly finished in March of 2012, the Owner objected to the 32 inch step width escalators. Pinkston depo. at 61-62; Trimmer Decl., ¶ 13; Letter from the Owner of March 19, 2012, (submitted as Plaintiff's Exh. I). A meeting was held regarding this issue on March 26, 2012, with the Owner, the Architect, Yates and Otis representatives all in attendance. Pinkston depo. at 89-90; Trimmer Decl., ¶ 13-14. Following that meeting, on March 28, 2012, Yates sent a letter to the Owner. Plaintiff's Exh. G. In that letter Yates stated among other things: "CSA [the Architect] had the opportunity to reject the escalators during the submittal review process. Though not clearly identified in the Contract Documents, the OTIS shop drawings identify clear tread width and critical dimensions. [The Architect] reviewed the submittal and indicated that the

[1] The approval language actually states: "The submittal documents have been reviewed for general compliance with the contract documents and for coordination purposes only." Pinkston testified: "They [Yates] reviewed it, but they don't check—you know, as much as they would like to, we don't check every component of every submittal." Pinkston depo. at 184.

shop drawings complied with the design intent. Based upon the information provided in the Contract Documents and compliance of shop drawings with the intent design the **escalators comply with the Contract Requirements.**" (emphasis added). *Id.* In that same letter Yates pointed out that two of the three bidders read the contract documents to require installation of escalators with 32 inch step width. *Id.*[2]

Subsequent to this letter, the Owner, disagreeing with Yates' position as stated in that letter, started threatening Yates with liquidated damages to the tune of $5,000 per day and tacitly threatening to never do business with Yates again. Pinkston depo. at 144-146, 151-153. At this point Yates changed its opinion as to whether or not the installed escalators were in conformance with the Contract Documents. Yates concluded they were not. Pinkston depo. at 181-182.

In the end, weighing its options, the dispute between Yates and the Owner resulted in a Change Order (#75). *See* Letter from Yates to Otis dated May 7,

---

[2]The letter was approved not only by Pinkston but also by Jeff Cross, Yates' senior vice president. Yates later took the position that they were acting as advocates for Otis. Pinkston depo. at 97. However, the fact remains that the letter was from Yates (not Otis) to the Owner. *Id.* In a declaration by William Marsh IV, Yates' project manager, Yates now takes the position contrary to Mr. Pinkston's deposition testimony, that the letter from Yates to the Owner of March 28, 2012, was only a draft and was not transmitted outside of Yates. Instead, Marsh states "the draft was revamped into what became my letter of March 29, 2012." Marsh Decl., ¶ 13, (submitted as def. Exh. 1 to reply) and Exh. 5 thereto. This letter appears to be a proposal for a resolution of the dispute between Yates and the Owner as it states: "The proposed amounts are not an admission of guilt or liability by Yates or OTIS and are only an effort to bring timely resolution to support the Project schedule." *Id.*

2012, (submitted as Plaintiff's Exh. M). In agreeing to perform the work under Change Order 75, Yates did not reserve its rights against the owner. Otis, however, agreed to do the work under Change Order 75, but did so under reservation of rights. Pinkston depo.at 157. Yates has not paid Otis for any work done by Otis on the project since January 2012, even though Yates has been fully compensated for the work it has performed, as well as what Otis has performed on the project. Pinkston depo. at 240, 245, 248.

Nowhere do the Contract Documents made available to Otis and the other bidders actually state the width as 40 inches. *See* Drawing A180, Detail A1 and Detail C6 (submitted as Plaintiff's exh. E). *See* also defendant's brief at 6-7.

**STANDARD OF REVIEW**

A moving party is entitled to summary judgment if there is no genuine issue of material fact, leaving final judgment to be decided as a matter of law. *See* Federal Rule of Civil Procedure 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1355-56 (1986). The facts, and any reasonable inferences therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the non-movant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1609 (1970). All "reasonable doubts" about the facts and all justifiable inferences are resolved in

favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). However, all "doubts" need not be so resolved. *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir.1987). Once met by the moving party, however, the burden shifts to the non-moving party to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990).

A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990). In addition, the non-moving party's evidence on rebuttal must be significantly probative and not based on mere assertion or be merely colorable. *See* Rule 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511 (1986). Speculation does not create a genuine issue of fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir.2005). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case .... A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a

verdict in its favor." *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir.2000), quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). A factual dispute regarding a non-material issue will not preclude the defendant from succeeding on a motion for summary judgment. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 953 (11th Cir.1991).

**LEGAL ANALYSIS**

Defendant Yates is entitled to summary judgment on its breach of contract claim if plaintiff Otis has breached its subcontract with Yates by installing nonconforming escalators with a step width of 32 inches instead of 40 inches. Yates can establish a breach of contract claim by showing "(A) the existence of a valid contract binding the parties in the action; (B) its own performance under the contract; (C) the plaintiff's nonperformance; and (D) damages." *Southern Medical Health Sys., Inc. v. Vaughn,* 669 So.2d 98, 99 (Ala. 1995) (citations omitted). A valid contract exists if defendant can demonstrate "an offer and acceptance, consideration and mutual assent to the terms essential to the formation of a contract." *Ex parte Grant*, 711 So.2d 464, 465 (Ala. 1997) (citations omitted).

In support of its motion Yates argues that there is no ambiguity in the contract terms and drawings "because the drawings are susceptible to only one reasonable interpretation: the escalator steps were required to be 39.5 inches

wide." Defendant's brief at 7. This bold assertion certainly is contradicted by the evidence that at least two independent bidders read these same drawings to require the escalator steps to be 32 inches wide. Additionally, that argument is contradicted by Pinkston's testimony that at least until the Owner complained that the step width of the installed escalators was incorrect in March of 2012, and up through Yates' letter of March 28, 2012, Yates believed that the escalators as installed with a step width of 32 inches complied with the Contract Documents and drawings. Putting aside that the Contract Documents and drawings supplied by Yates to Otis and the other bidders **never** called for 40 inch step widths, they also never used the terms "step width," "tread width," "rated width," or "nominal width." *See* Pinkston depo. at 307-308. Defendant's argument that the subject drawings are unambiguous is also contradicted by Pinkston's testimony that the drawings could have been clearer. *Id.* Yates approved the shop drawings and bid submitted by Otis as did the Architect. Only after those approvals had been made did Yates sign the subcontract with Otis. Yates itself constructed the wellways for escalators having a step width of 32 inches, and both Yates and the Owner had superintendents, inspectors and architects on the project construction site where they had ample opportunity to question the width of the escalator steps had they found them to be in noncompliance with the contract documents and drawings.

Yates argues that the fact that Yates built the escalator wellways to accommodate the 32 inch step width escalators is not evidence of Yates' agreement with Otis' interpretation, but rather just Yates customizing the wellways to what the installer needed. Reply at 9. However, it was not until Yates was under pressure that it changed its mind about the step width of 32 inches being nonconforming. It did so without looking at any additional drawings or documents, but rather by asking people in its office what they thought. Pinkston depo. 181-182. Finally, as the Architect wanted to make very clear what Change Order 75 called for, the specific step width was specified in that Change Order. *Id.* at 198.

Viewing these facts and all reasonable inferences therefrom in the light most favorable to the non-moving party, the court finds that genuine issues of material fact exist. *See Blount Bros. Const. Co. v. United States*, 346 F.2d 962, 972-973 (Fed. Cir. 1965). This court therefore finds that Yates' motion for partial summary judgment is due to be DENIED, which the court shall do by Separate Order.

DONE and ORDERED this 12th day of December 2012.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE